IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRINA MARON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 20-cv-07282 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THE LAW OFFICE OF RAY GARCIA, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In 2006, Defendant American Enterprise Bank ("AEB") extended a $1.6 million loan to Plaintiff Bishop Partnership, LLC ("Bishop") to finance the purchase and development of a property in Chicago, Illinois ("Bishop Loan"). The Bishop Loan was secured by mortgages on the Chicago property and two Florida condominiums, each owned by one of Bishop's co-members, Plaintiff Irina Maron and Michael Roiburt,[1] and their then-spouses, Plaintiffs Michael Fridman and Bella Roiburt. Bishop defaulted on the Bishop Loan in early 2009, leading AEB to pursue foreclosure of the underlying collateral. Plaintiffs allege that AEB fraudulently procured the Bishop Loan as part of a larger scheme through which AEB sought to profit from approving numerous loans, regardless of quality or risk. Therefore, they have brought the present action against AEB, its successor entity, and the companies that own both AEB and its successor[2]

---

[1] Michael Roiburt is deceased and therefore not a Plaintiff in this action.

[2] The AEB parent companies are A.E. Bancorp, Inc. and A.E. Bancorp, LLC, and the AEB successor entity is AEB Merger LLC.

(collectively, "AEB Defendants"), as well as certain AEB executives and attorneys.[3] Plaintiffs' complaint sets forth five claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. AEB Defendants have now moved to dismiss Fridman's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) (Dkt. No. 15) and all the remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 17). The other Defendants have filed their own motions to dismiss. (Dkt. No. 31, 32, 39, 40, 42.) All have joined the arguments raised in AEB Defendants' Rule 12(b)(6) motion, and all but two also join the arguments raised in AEB Defendants' Rule 12(b)(1) motion. For the reasons that follow, the Court denies the Rule 12(b)(1) motions and grants the Rule 12(b)(6) motions.

## BACKGROUND

The Court begins with a brief overview of the allegations made in Plaintiffs' complaint.

As alleged, in 2006, Maron and Michael Roiburt met with an AEB executive to discuss financing for the purchase and rehabilitation of a property at 1421-25 W. Garfield in Chicago ("Chicago Property"). (Compl. ¶¶ 150–51, Dkt. No. 1.) Ultimately, AEB extended a loan of about $1.6 million to Bishop—an entity of which Maron and Michael Roiburt were co-members—to finance the sale and rehabilitation of the Chicago Property. (*Id.* ¶ 185.) The Bishop Loan was secured not only by that Chicago Property but also by mortgages on two Florida condominiums, one owned by Maron and her then-husband Fridman and the other owned by Michael Roiburt and his wife Bella Roiburt. (*Id.* ¶¶ 186, 463.) However, neither Maron nor Michael Roiburt authorized the use of the Florida condominiums as collateral, and AEB purportedly acquired its security interest in them based on forged documents created by one of its executives. (*Id.* ¶¶ 195–96.) Also

---

[3] The Defendant AEB Executives are Gerald Forsyth and Charles Kantro. The Defendant AEB attorneys are The Law Office of Ray Garcia, P.A., Ray Garcia, Levine Kellogg Lehman Schneider + Grossman LLP, and Victor Petrescu.

unbeknownst to Plaintiffs, AEB employed other fraudulent means to inflate the value of the Bishop Loan to a level not supported by the value of the underlying property or any Plaintiff's net worth. (*Id.* ¶¶ 161–82.)

Eventually, the Bishop Loan went into default. AEB successfully purchased the Chicago Property in an April 2010 judicial sale. (*Id.* ¶¶ 377, 420.) Then, in March 2011, AEB initiated an action to foreclose on the Florida condominiums in Florida state court. (*Id.* ¶ 351.) According to Plaintiffs, over the course of the foreclosure action (which was ongoing at the time the present lawsuit was initiated) AEB had its attorneys make numerous false filings and submissions to the court. (*Id.* ¶¶ 270–496.) Certain of the allegedly false filings were signed by AEB executives. (*Id.* ¶¶ 293–347, 392–496.)

Broadly, Plaintiffs allege in this action that they were caught up in a scheme on the part of AEB and various AEB entities and executives to knowingly extend low-quality and risky loans to borrowers. (*Id.* ¶ 46.) AEB would then profit off the fees associated with originating those loans and by selling the loans before they defaulted. (*Id.* ¶¶ 46–47, 505, 508.) When AEB was unable to sell the loans before default, it would foreclose upon the properties underlying the loans. (*Id.* ¶¶ 46, 49–50.) Each count of Plaintiffs' complaint alleges that AEB and various configurations of AEB parent and successor entities, executives, and attorneys, engaged in a pattern of racketeering activity. Altogether, Plaintiffs' complaint sets forth claims under each of the RICO's four subsections and seeks to hold each Defendant liable under the RICO's civil enforcement provision, 18 U.S.C. § 1964(c).

**DISCUSSION**

AEB Defendants, joined by most of the other Defendants, seek dismissal of Fridman's RICO claims pursuant to Rule 12(b)(1) for lack of standing. All Defendants also move to dismiss any remaining claims pursuant to Rule 12(b)(6).

**I. Standing**

RICO's civil enforcement provision provides a cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "The phrase 'injured in business or property' has been interpreted as a standing requirement—rather than an element of the cause of action—which must be satisfied in order to prevail on a RICO claim." *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).[4] Similarly, "[t]he causation component of § 1964(c)—whether an alleged RICO injury was caused 'by reason of' a violation of the statute—has also been considered a component of standing." *Id.* Here, AEB Defendants contend that Fridman lacks standing because he has failed to show that Defendants' alleged violative conduct caused him an injury to his business or property.

Under Rule 12(b)(1), a party may make either a factual or facial challenge to subject-matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A facial challenge requires "only that the court look to the complaint and see if the plaintiff has sufficiently **alleged** a basis of subject[-]matter jurisdiction." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440,

---

[4] As one court in this District has observed, at least three Circuit Courts of Appeals "have held that RICO standing goes to merits and not the court's jurisdiction," and thus is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1). *Fiala v. Wasco Sanitary Dist.*, No. 2012 WL 917851, at *9 (N.D. Ill. Mar. 16, 2012) (collecting cases). But since the Seventh Circuit expressly held in *Evans* that RICO standing "represents a jurisdictional requirement which remains open to review at all stages of the litigation," this Court will consider the issue under Rule 12(b)(1). *Id.* (quoting *Evans*, 434 F.3d at 924). It is worth noting, however, that the outcome would be the same if AEB Defendants' argument were considered under Rule 12(b)(6).

443 (7th Cir. 2009). By contrast, "a factual challenge lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* at 444 (internal quotation marks omitted). Where a defendant mounts a factual challenge, "the court may look beyond the pleadings and view any evidence submitted to determine if subject[-]matter jurisdiction exists." *Silha*, 807 F.3d at 173. Ultimately, the proponent of jurisdiction bears the burden of proving by a preponderance of the evidence that jurisdiction exists. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

AEB Defendants primarily raise a factual challenge to Fridman's standing.[5] Their motion identifies eight categories of claimed injuries, broadly stemming from expenditures associated with the Bishop Loan and foreclosures on the underlying collateral. AEB Defendants introduce evidence showing that Bishop paid all of the expenditures related to the Bishop Loan and that Fridman held no ownership interest in any of the collateral by the time AEB initiated foreclosure proceedings. (*See* AEB Defendants' Mem. in Supp. of Mot. to Dismiss for Lack of Jurisdiction, Exs. A–G, Dkt. Nos. 16-1–16-7.) In his response, Fridman does not address much of that evidence and instead argues that his standing is established by two of the eight injuries identified in AEB Defendants' motion. Thus, Fridman has failed to carry his burden of proving that the other six injuries provide a basis for his standing.

Fridman first argues that the attorney's fees he incurred in defending AEB's action to foreclose on the Florida condominiums constituted an injury to his business or property. To rebut

---

[5] AEB Defendants request that the Court take judicial notice of each piece of evidence outside the pleadings they submit. On a factual challenge, the Court may consider matters outside the pleadings without taking judicial notice of that information. *E.g.*, *Murphy v. United Parcel Serv., Inc.*, No. 19-cv-01728-pp, 2021 WL 1102190, at *3 (E.D. Wis. Mar. 23, 2021) ("Because the defendant has raised a factual challenge to the court's jurisdiction, the court may consider [matters outside the pleadings] in determining whether it has jurisdiction, even though it has declined to take judicial notice of those agreements."). Thus, the Court does not take judicial notice of AEB Defendants' evidence in considering their factual challenge to Fridman's standing.

5

Fridman's claimed injury, AEB Defendants rely on evidence showing that, at the time the Florida foreclosure proceeding was initiated, Fridman no longer had an ownership interest in the Florida condominium he once co-owned with Maron. Thus, AEB Defendants argue that Fridman had no reason to spend any money in connection with the foreclosure proceeding. However, AEB Defendants do not deny that Fridman was named as a defendant in the Florida foreclosure action despite no longer having an ownership interest in the condominium. Indeed, Plaintiffs have alleged that Fridman was brought into the action because AEB (with the participation of the AEB executives and attorneys named as Defendants here) submitted false filings to the state court showing that Fridman agreed to act as a guarantor of the Bishop Loan. (Compl. ¶¶ 358–59.) Fridman necessarily had to take steps to contest AEB's allegedly false assertions of his liability as a guarantor of the Bishop Loan or else default judgment would be entered against him in the Florida foreclosure proceeding.

Next, AEB Defendants attack the facial sufficiency of the complaint's allegations of Fridman's injury from the Florida foreclosure proceeding. By requiring that a plaintiff suffer an injury to his "business or property," RICO meant to "preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992). "In line with that limitation, a plaintiff must allege a concrete financial loss, which does not encompass a mere injury to a valuable intangible property interest." *Mitchell v. Village of Dixmoor*, No. 20 C 436, 2021 WL 3603625, at *4 (N.D. Ill. Aug. 13, 2021). Put differently, to confer RICO standing, an injury "must be 'concrete and actual,' as opposed to speculative and amorphous." *Evans*, 434 F.3d at 932.

There is some dispute as to whether attorney's fees can ever constitute injuries that confer RICO standing. *See Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 & n.11 (E.D.

Pa. 2007) (collecting cases). The Seventh Circuit has held that attorney's fees that "emanate from a personal injury" do not supply standing under RICO, but it did not address whether attorney's fees might establish the "business or property" injury necessary for RICO standing under other circumstances. *Evans*, 434 F.3d at 931. This Court agrees with those courts that have concluded that attorney's fees already paid by a plaintiff to defend himself in a separate lawsuit may, in certain circumstances, constitute a concrete and actual injury to business or property. *E.g.*, *Walter*, 480 F. Supp. 2d at 804. Here, AEB Defendants' alleged racketeering activity in connection with the Florida foreclosure proceeding was directed toward recovering money from Fridman as a guarantor. Thus, because the attorney's fees incurred by Fridman stemmed from his efforts to defend against AEB's false claim to his property in the foreclosure action, the Court finds that those fee emanate from an injury to business or property. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 263 (6th Cir. 2014) ("[T]he attorney's fees [the plaintiff] incurred were pecuniary losses intertwined with the property injury and therefore are recoverable under § 1964(c)."). Moreover, because AEB's false statements to the state court were the reason why Fridman was brought into the case, their conduct caused Fridman's injury.

While Fridman also argues that he was injured by AEB's assignment of the forged notes and mortgages underlying the Bishop Loan to its successor entity, he fails to plead or prove what concrete financial loss that assignment caused him. Nonetheless, because Fridman has adequately pleaded an injury to his business or property based on the attorney's fees he incurred as a result of Defendants' RICO violations, he has standing. For that reason, AEB Defendants' motion to dismiss for lack of standing is denied.

## II. Statute of Limitations

The Court next turns to Defendants' Rule 12(b)(6) motions. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Defendants contend that Plaintiffs' RICO claims must be dismissed as time-barred under the applicable statute of limitations.[6] Normally, a plaintiff's complaint need not anticipate an affirmative defense such as the statute of limitations to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "The exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.*

Although RICO's civil enforcement provision does not provide an express statute of limitations, the Supreme Court has held that civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 146, 156 (1987). The four-year limitations period "begins to run when the plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants." *Cancer Found., Inc. v. Cerberus*

---

[6] In addition to seeking dismissal on statute-of-limitations grounds, AEB Defendants and the remaining Defendants' Rule 12(b)(6) motions advance other several other arguments for dismissal. As will be discussed below, because AEB Defendants' statute-of-limitations argument will dispose of the entirety of Plaintiffs' claims, it is unnecessary for the Court to address those alternative bases for dismissal.

*Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Further, it is "the injury arising from the first predicate act to injure the plaintiff ('predicate acts' are the illegal acts committed by the racketeering enterprise) [that] starts the limitations period running, rather than the injury from the last predicate act, which might occur decades after the first." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386–87 (7th Cir. 2010). "And the victim doesn't have to know he's been injured by a RICO violation, which is to say by a **pattern** of racketeering activity (that is, a series of predicate acts)." *Id.* at 387; *see also Cancer Found.*, 559 F.3d at 674 ("A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations— the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim."). At the same time, there must "be a pattern of racketeering before the plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff discovers her injury." *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992).

Here, the first predicate acts alleged consist of the several fraudulent acts committed by AEB and its agents in the process of originating and approving the Bishop Loan. (Compl. ¶¶ 161–217, 252–66.) Those acts occurred in 2006. And since Plaintiffs plead a series of related predicate acts occurring in 2006, Defendants' pattern of racketeering began that year as well. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) ("A pattern of racketeering activity consists, at the very least, of two predicate acts of racketeering committed within a ten-year period."). Thus, the question is when Plaintiffs discovered or should have discovered their injury from those predicate acts. According to Defendants, that question can be definitively answered by taking judicial notice of the counterclaims Plaintiffs filed in the Florida foreclosure action. Since the Court "is allowed to take judicial notice of matters in the public record, such as filings in other courts," it will do so. *Langone v. Miller*, 631 F. Supp. 2d 1067, 1070 (N.D. Ill. 2009).

9

Plaintiffs' Florida counterclaims alleged that AEB violated Florida's RICO statute, Fla. Stat. § 772.103. Florida's RICO statute "is patterned after its federal counterpart" and Florida courts "look to federal RICO decisions as persuasive authority." *Lugo v. State*, 845 So.2d 74, 96 n.39 (Fla. 2003). Specifically, Plaintiffs' Florida counterclaims alleged the same pattern of racketeering in connection with the origination and approval of the Bishop Loan as here. (AEB Defendants' Mem. in Supp. of Mot. to Dismiss for Failure to State a Claim, Ex. A ¶¶ 88–187, Dkt. No. 18-1.) Critically, Plaintiffs also asserted that AEB's violations of the Florida RICO statute injured them by, among other things, making them liable for the $1.6 million owed on the Bishop Loan and impairing their title to the Florida condominiums. (*Id.* ¶ 495.) Those are the same injuries alleged here. (Compl. ¶¶ 814, 822, 839, 850, 859.) Consequently, the Florida counterclaims establish that Plaintiffs knew or should have known of the injuries alleged in this action by the time they filed their Florida counterclaims at the latest. And because the Florida counterclaims were filed on June 25, 2012 (AEB Defendants' Mem. in Supp. of Mot. to Dismiss for Failure to State a Claim, Ex. A at 1), the four-year statute of limitations on Plaintiffs' federal RICO claims expired no later than June 25, 2016—well before this action was initiated on December 9, 2020.

Still, Plaintiffs contend that the Court cannot dismiss their RICO claims as time-barred at the motion to dismiss stage because they may eventually be able to show the applicability of a tolling doctrine. First, Plaintiffs assert that the doctrine of equitable tolling may apply. The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Given that Florida's RICO statute is modeled off the federal RICO statute, Plaintiffs cannot plausibly argue that they

10

lacked the information necessary to bring the present federal RICO claims back when they filed Florida-law RICO counterclaims based on the same allegations. Similarly, the Florida counterclaims show the inapplicability of the doctrine of equitable estoppel, "which comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Id.* at 450.

Plaintiffs also suggest that the statute of limitations should be tolled under Illinois's continuing tort doctrine, which provides that "when a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *LAJIM, LLC v. Gen. Elec. Co.*, No. 13 CV 50348, 2015 WL 9259918, at *16 (N.D. Ill. Dec. 18, 2015). That state-law doctrine is unavailable here, however, as Plaintiffs' federal RICO claims are governed by a federal statute of limitations. *Beck v. Caterpillar Inc.*, 50 F.3d 405, 406–07 (7th Cir. 1995) ("When the timeliness of a federal cause of action is measured by a state statute of limitations, it only makes sense to apply the state's tolling and savings provisions, for they are interrelated. The same cannot be said when the federal claim in question is governed by a *federal* statute of limitations . . . ." (citations omitted)). In any case, the injury for RICO statute-of-limitations purposes is the injury stemming from the first predicate acts of fraud. Those acts were complete, at the latest, when the Bishop Loan was approved. *See LAJIM*, 2015 WL 9259918, at *16 ("The [continuing tort] doctrine applies for the duration of the tortious conduct, as distinguished from the duration of the damages that continue after the conduct ends.").

Finally, Plaintiffs contend that under the separate accrual rule, Defendants' predicate acts committed in connection with the Florida foreclosure action have inflicted new and independent injuries on Plaintiffs that start a new statute of limitations clock running. "The separate accrual rule applies to new events by the enterprise that leads to new injuries." *Zalesiak v. UnumProvident Corp.*, No. 06 C 4433, 2007 WL 4365345, at *6 (N.D. Ill. Dec. 12, 2007). But

"the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). Here, the Florida foreclosure action is directly connected to Plaintiffs' time-barred injuries arising from the default of the Bishop Loan. Thus, the separate accrual rule is inapplicable.

In sum, because Plaintiffs' complaint and their Florida counterclaims leave no question that Plaintiffs' RICO claims are time-barred, Defendants' motions to dismiss for failure to state a claim are granted. Because this is Plaintiffs' original complaint, it would normally be appropriate to dismiss the complaint without prejudice and allow Plaintiffs "at least one opportunity to try and amend [their] complaint before the entire action is dismissed." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) (internal quotation marks omitted). However, "a district court may refuse leave to amend where amendment would be futile." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012). Here, because Plaintiffs' RICO claims are plainly time-barred, granting leave to amend would be futile. Therefore, the Court dismisses the complaint with prejudice. *See, e.g.*, *DeJesus v. Jeschke*, No. 02 C 1685, 2002 WL 1400532, at *2 (N.D. Ill. June 27, 2002) ("[I]f the statute of limitations for the underlying action has expired, the court may . . . in its discretion dismiss with prejudice.").

## CONCLUSION

AEB Defendants' motion to dismiss for lack of jurisdiction (Dkt. No. 15) is denied, along with the corresponding motions by those Defendants who joined that request (Dkt. Nos. 31, 42). Defendants' motions to dismiss for failure to state a claim (Dkt. Nos. 17, 32, 39, 40) are granted. Plaintiffs' complaint is dismissed with prejudice based on the statute of limitations. The Clerk will enter Judgment in favor of Defendants and this case will be closed.

ENTERED:

Dated: September 28, 2021

_____
Andrea R. Wood
United States District Judge